EHRHARDT ET AL. *v.* BALTIMORE & OHIO RAILROAD COMPANY, APPELLANT; PROCTER & GAMBLE COMPANY, APPELLEE.

(No. C-840335—Decided April 10, 1985.)

*Lindhorst & Dreidame Co., L.P.A., James L. O'Connell* and *Mark E. Elsener,* for appellant.

*Dinsmore & Shohl* and *Patrick D. Lane,* for appellee.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County.

Third-party plaintiff-appellant, the Baltimore & Ohio Railroad Company ("B&O"), appeals from the judgment of the trial court which granted summary judgment[1] in favor of third-party

---

[1] The trial court found no just reason for delay and rendered a final judgment adverse to B&O's third-party complaint without disposing of the other issues in the case, pursuant to Civ. R. 54(B).

defendant-appellee, the Procter & Gamble Company ("P&G"). We find no merit in B&O's single assignment of error that the trial court erred in granting P&G's motion for summary judgment.

The facts of the case are not in dispute. Plaintiff, Donald W. Ehrhardt, an employee of P&G, was injured on November 3, 1980, while working at P&G's St. Bernard Ivorydale Soap Plant. On the day in question, plaintiff suffered serious injuries when he stepped onto a defective catwalk in an attempt to open a railroad boxcar door. The boxcar, although owned by B&O, was physically located in the railroad yard at P&G's plant.

Plaintiff applied for, and received, workers' compensation benefits. P&G is a self-insured employer in full compliance with the provisions of the Workers' Compensation Act, R.C. 4123.01 et seq. After Ehrhardt began receiving benefits for workers' compensation, he sued B&O on November 1, 1982, alleging that his personal injuries were the proximate result of the railroad's negligence. The complaint also included a count for loss of consortium on behalf of plaintiff's wife, Sue Ellen Ehrhardt. B&O filed a third-party complaint against P&G, seeking indemnification for any recovery obtained by plaintiffs, predicated upon P&G's liability under the terms of a "sidetrack agreement" between B&O and P&G, entered into on October 7, 1915.

P&G answered the complaint and subsequently filed a motion for summary judgment, arguing that it was ab-solutely immune from such liability under the Ohio Constitution and the Workers' Compensation Act. The trial court agreed, and granted summary judgment in favor of P&G. From the judgment entry dated April 4, 1984, B&O timely filed the instant appeal.

In support of its assignment of error, appellant contends that the trial court's judgment is contrary to law. Appellant's contention is based upon the argument that our decision in *Davis* v. *Consolidated Rail Corp.* (1981), 2 Ohio App. 3d 475, has been implicitly overruled by the Supreme Court of Ohio in *Allen* v. *Standard Oil Co.* (1982), 2 Ohio St. 3d 122. We disagree.

In *Davis*, the plaintiff, an employee of Ford Motor Company ("Ford"), brought an action against Consolidated Rail Corporation ("Conrail") for injuries sustained during the course and scope of his employment. Conrail later filed a third-party complaint against Ford based on an indemnification clause contained in a "sidetrack agreement"[2] between Ford and Conrail. Under this agreement, Ford promised to indemnify Conrail for any act or omission of Ford, or its employees, and to share equally with Conrail any loss arising from their joint negligence. The trial court granted Ford's motion for summary judgment, and we affirmed.

We scrutinized the indemnity provision contained in the sidetrack agreement between Ford and Conrail, and recognized that it created a broad right of indemnification, covering any number of possibilities. We acknowledged that

---

[2] The sidetrack agreement in *Davis* provided in pertinent part the following clause:

" ' * * * The Industry [Ford] also agrees to release, indemnify and hold harmless the Railroad [Conrail], its officers, employes and agents, for loss, damage or injury from any act or omission of the Industry, its officers, employes and agents, to the person or property of the parties hereto and their officers, employes and agents, and to the person or property of any other person or corporation, while on or about the side track. If any claim or liability, other than from fire caused by locomotives as aforesaid, shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally.' " *Id.* at 477.

the sidetrack agreement undoubtedly waived certain rights and immunities possessed by the employer. Nevertheless, we concluded that the agreement did not specifically waive the immunity granted to a complying employer by the Ohio Constitution. We held that "a complying employer does not surrender its constitutional and statutory immunity from suits arising out of employment unless and until it executes a document specifically waiving that immunity. * * *" *Id.* at 477.

Our holding in *Davis* was based upon the maxim that the Ohio Constitution[3] and the Ohio Workers' Compensation Act[4] relieve an employer who complies with that law from liability to anyone for damages arising from an injury to an employee "occasioned in the course of" his employment. *Bevis* v. *Armco Steel Corp.* (1951), 156 Ohio St. 295 [46 O.O. 172]; *Williams* v. *Ashland Chemical Co.* (1976), 52 Ohio App. 2d 81 [6 O.O.3d 56]. Thus, the immunity granted a complying employer by Section 35, Article II of the Ohio Constitution, protects that particular employer from actions for indemnification by third parties who are or may be held liable to the employee for his workplace injury. Although this immunity may be waived by an employer, *Bevis* v. *Armco Steel Corp., supra,* at 305-306, such a decision can only be effectuated by an express waiver. *Williams* v. *Ashland Chemical Co., supra,* at 89.

In *Allen* v. *Standard Oil Co., supra,* the Supreme Court of Ohio held, in paragraphs one and two of the syllabus:

"1. When an indemnitor expressly agrees to indemnify an indemnitee except in certain specified instances and it is determined that the exceptions do not pertain, the indemnitor is obligated to indemnify the indemnitee under the terms of the agreement.

"2. When an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs, including attorney fees and expenses, incurred by the indemnitee in defending the initial action and in vindicating its right to indemnity in a third-party action brought against the indemnitor."

---

[3] Section 35, Article II of the Ohio Constitution, the enabling provision for the creation of Ohio's Workers' Compensation Act, provides in pertinent part:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, *occasioned in the course of* such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, *shall not be liable to respond in damages at common law or by statute for*

such death, injuries or occupational disease. * * *" (Emphasis added.)

[4] R.C. 4123.74 provides:

"Employers who comply with section 4123.35 of the Revised Code *shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment,* or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval of time in which such employer is permitted to pay such compensation directly to his injured employees or the dependents of his killed employees, whether or not such injury, occupational disease, bodily condition, or death is compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code." (Emphasis added.)

In *Allen,* appellant, Standard Oil Company ("Sohio"), and appellee Refiners Transport & Terminal Corporation ("Refiners") entered into an agreement titled the "Columbus Bulk Products Transportation Agreement." The agreement contained an indemnity provision whereby Refiners agreed to indemnify Sohio for certain claims brought against Sohio.[5] The agreement also required that Refiners include Sohio as an additional insured to Refiners' insurance policy with appellee Insurance Company of North America ("INA").

Plaintiff Allen, an employee of Refiners, suffered injuries on Sohio's premises. Allen sued Sohio, alleging that his injuries were the proximate result of Sohio's negligence. Sohio tendered the defense of the action to Refiners and INA, but they refused to defend Sohio. Sohio then filed a third-party complaint against Refiners and INA, alleging breach of the indemnity provision of the agreement. The trial court subsequently granted Sohio's motion for summary judgment on the third-party complaint. The court of appeals reversed the trial court's ruling, holding that the contractual language of the agreement " 'excuse[d] Refiners from defending the lawsuit * * *.' " *Id.* at 123. Specifically, the court of appeals examined the indemnity provision and concluded that Refiners was required to indemnify Sohio " 'except where the * * * negligence of Sohio or third persons is the proximate cause of the accident.' " *Id.* The court of appeals held that this exceptions clause was applicable and relieved Refiners of its obligation to defend.

The Ohio Supreme Court reversed, simply because its review of the record and the indemnity provision indicated that the exceptions clause did not apply. The court found that the language used in the indemnity provision was clear and unambiguous and, therefore, subject to its plain interpretation. *Id.* at 124. The court stated that " '* * * [t]he claims arising from the injuries sustained by Allen in the course of performing his duties as a Refiners' employee appear to be precisely the type of claims Sohio sought to be indemnified against. * * *" *Id.* at 123. The court concluded that Sohio was entitled to be indemnified pursuant to its agreement with Refiners.

We do not believe that our decision in *Davis* was expressly or implicitly overruled by *Allen.* Quite obviously, the *Allen* decision does not discuss the *Davis* case. In *Allen,* the court does not mention whether the injured employee sought or received workers' compensation benefits. In *Allen,* there is no reference to the immunity provisions contained in Section 35, Article II, of the Ohio Constitution and R.C. 4123.74. The reasons for the decisions in *Allen* and *Davis* were different. Thus, while *Allen* and *Davis* both dealt with indemnity agreements, that is where the similarity between the two cases ends. We conclude that our decision in *Davis* is dispositive of the question presented in the instant case.

In the case *sub judice,* the "side-

---

[5] The *Allen* agreement's indemnity clause stated:

" 'Carrier [Refiners] agrees to indemnify, save harmless, and defend Sohio from and against all and any liabilities, losses, obligations, claims, damages, penalties, suits, actions, judgments, costs and expenses of whatsoever nature which are incurred or brought against Sohio as the result of injury to or death of persons or damages to or loss of property caused by acts or omission to act by Carrier, its agents, servants and employees in the performance of work under this Agreement, *except where the separate intervening negligence of Sohio or third persons is the proximate cause of the accident.' "* (Emphasis added.) *Id.* at 123.

track" agreement provides the following indemnity clause:

"4. It is further understood that the First Party [P&G] will, at its own expense, perform intra-plant switching on said tracks. The First Party recognizes the increased hazard caused by such joint operation over said tracks and agrees to indemnify and hold harmless each of the Second Parties [B&O] from all liability, loss, damage and expense arising from collision of the engines and trains of the First Party with the engines and trains of the Second Parties, from personal injury, including death, to the employes of either party hereto or to third persons or damage to the equipment or property in charge of the Second Parties, growing out of the negligent operation of the engines and trains of the First Party, or from any other negligence of the officers, employes or crews of the First Party, and the Second Parties assume a like responsibility for the negligent acts of their employes. The First Party agrees to indemnify and hold harmless each of the Second Parties from all liability, loss, damage and expenses resulting from derailments or accidents due to defective track or roadway or fixtures connected therewith, and not to negligence of the Second Parties.

"In case of accident resulting from the joint negligence of the First Party and the Second Parties, all liability, loss, damage and expense in connection therewith shall be borne by the First and Second Parties in equal shares."

We note that the indemnification clause in the case at bar is substantially the same as the one we encountered in *Davis.* In line with *Davis,* our examination of the indemnity clause in the instant case reveals that its provisions, while broad and seemingly all-encompassing, do not expressly and specifically waive the immunities conferred upon appellee as a complying employer. Thus, we hold that appellee is not bound to indemnify appellant for the amount of any judgment entered against it.

Notwithstanding the above, appellant argues, in the alternative, that even if our holding in *Davis* v. *Consolidated Rail Corp., supra,* survives *Allen* v. *Standard Oil Co., supra,* the application of our decision in *Davis* to the facts of the instant case violates the constitutional prohibition against the impairment of the obligation of contracts. We cannot agree.

The Ohio Constitution states that "[t]he general assembly shall have no power to pass * * * laws impairing the obligation of contracts* * *." Section 28, Article II, Ohio Constitution. The Contract Clause of the United States Constitution declares that "[n]o state shall * * * pass any * * * Law impairing the Obligation of Contracts * * *." Clause 1, Section 10, Article I, United States Constitution. The Contract Clause prohibits the enactment of legislative acts which retrospectively impair the obligation of contracts. See *Wyoming* v. *Ohio Traction Co.* (1922), 104 Ohio St. 325, 342 (Johnson, J., concurring).

Appellant does not contend that the enactment of R.C. 4123.74 violated the Contract Clause. Rather, appellant maintains that our interpretation of the scope of R.C. 4123.74 in *Davis* v. *Consolidated Rail Corp., supra,* constituted a "law" which resulted in the impairment of its contract with appellee, in violation of the United States Constitution. While the general rule is that state court decisions are not "laws" within the federal prohibition against the impairment of the obligation of contracts, *Barrows* v. *Jackson* (1953), 346 U.S. 249, 260, judicial decisions which change the construction and interpretation of a statute may violate the Contract Clause. See *Thomas* v. *State, ex rel. Gilbert* (1907), 76 Ohio St. 341. Thus, we need only determine whether our decision in

*Davis* v. *Consolidated Rail Corp., supra,* changed the construction and interpretation of R.C. 4123.74 in such a way as to constitute a "law" which violated the Contract Clause of the United States Constitution.

Our analysis begins and ends with the threshold inquiry of "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship. * * *" (Footnote omitted.) *Allied Structural Steel Co.* v. *Spannaus* (1978), 438 U.S. 234, 244. A state regulation which restricts a party to gains it reasonably expected from the contract does not constitute a substantial impairment. *United States Trust Co.* v. *New Jersey* (1977), 431 U.S. 1, 31.

In the case *sub judice,* the October 7, 1915 contract between appellant and appellee was entered into subject to Section 35, Article II, Ohio Constitution, effective 1913. Although R.C. 4123.74 was not enacted until after 1915, the seeds of appellee's constitutional immunity were already planted. Our decision in *Davis* did not alter the construction or interpretation of R.C. 4123.74. *Davis* merely stands for the proposition that an employer who complies with Ohio's workers' compensation laws does not surrender its immunity from suits for non-intentional, employment-related injuries unless and until the employer executes a document specifically waiving that immunity.

We hold that our decision in *Davis* has not operated as a substantial impairment of the contractual relationship between appellant and appellee. The parties have received essentially what they contracted for. Thus we find no violation of the Contract Clause. Our holding in *Davis* is reaffirmed.

In reviewing a summary judgment, the trial and appellate courts use the same standard, that the inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion, and if

when so viewed reasonable minds can come to differing conclusions the motion should be overruled. * * *" *Hounshell* v. *American States Ins. Co.* (1981), 67 Ohio St. 2d 427, 433 [21 O.O.3d 267]; see, also, *Poller* v. *Columbia Broadcasting System, Inc.* (1962), 368 U.S. 464, 473; *Williams* v. *First United Church of Christ* (1974), 37 Ohio St. 2d 150 [66 O.O.2d 311]. The burden of establishing that material facts are not in dispute and that no genuine issue of material fact exists is on the party moving for summary judgment. *Hamlin* v. *McAlpin Co.* (1964), 175 Ohio St. 517 [26 O.O.2d 206], paragraph two of the syllabus. We are convinced that appellee carried its burden and that summary judgment was proper.

Consequently, the trial court did not err when it granted appellee's motion for summary judgment. Appellant's assignment of error is overruled and the judgment of the Hamilton County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DOAN and KLUSMEIER, JJ., concur.

BLACK, P.J., did not participate in the decision.