OPINION
{¶ 1} On July 5, 1999, Angela Hayes was killed in an automobile accident in Pennsylvania. At the time of the accident, Ms. Hayes' mother, appellee Emma Dalton, was employed by Massillon Plastics/Rubbermaid, Inc. ("Rubbermaid"). Rubbermaid was insured under a business auto policy and a commercial general liability policy issued by appellant Lumbermens Mutual Insurance Company.
 {¶ 2} On June 7, 2001, appellee filed a complaint against appellant and others for uninsured/underinsured motorist benefits. Both parties filed motions for summary judgment. By judgment entry filed May 22, 2002, the trial court granted appellee's motion, finding she was entitled to coverage under both of appellant's policies.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 {¶ 4} "I. The trial court improperly determined that Dalton was an insured under lumbermens' business auto policy and/or commercial general liability policy.
 {¶ 5} "II. The trial court erred in determining that the lumbermens commercial general liability policy was an automobile liability policy subject to the um/uim mandatory offering set forth in R.C. 2937.18 as amended by H.B. 261.
 {¶ 6} "III. The trial court erred in mandating uim coverage under the lumbermens policies since Ms. Dalton failed to satisfy the policies' preconditions necessary to entitle her to coverage.
 {¶ 7} "IV. ASSUMING ARGUENDO That Ms. Dalton is an insured under either policy, her claim is subject to the deductibles applicable to claims under the policies.
 {¶ 8} "V. A declaration that Ms. Dalton is an insured under the lumbermens policies would be violative to the Ohio and United States Constitution.
 {¶ 9} "VI. In Arguendo, if this court determines that Ms. Dalton is entitled to uim benefits, the lumbermens policy only requires it to pay uim benefits on a pro rata basis to the extent that its uim limits exceed the primary coverage available to Ms. Dalton under other insurance.
 {¶ 10} "VII. The trial court erred in denying lumbermens' motion for continuance of a ruling on summary judgment pursuant to rule 56(F) of the Ohio Rules of Civil Procedure."
 I, II {¶ 11} Appellant claims the trial court erred in determining appellee was an insured under the business auto and commercial general liability policies. We address each policy in turn.
 BUSINESS AUTO POLICY {¶ 12} The parties concede the business auto policy definition of "Who Is An Insured" is identical to the policy language analyzed inScott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292, except for the fact employees are named. Appellant argues although appellee is an insured thereunder, the holding of Scott-Pontzer
does not apply because the "Drive Other Car Coverage — Broadened Coverage for Named Individuals" Endorsement excludes coverage to appellee when not in a company owned vehicle. Section (B) of the endorsement reads:
 {¶ 13} "B. CHANGES IN LIABILITY COVERAGE
 {¶ 14} "1. Any `auto' you don't own, hire or borrow is a covered `auto' for LIABILITY COVERAGE while being used by any individual named in the Schedule or by his or her spouse while a resident of the same household except:
 {¶ 15} "a. Any `auto' owned by that individual or by any member of his or her household.
 {¶ 16} "b. Any `auto' used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking `autos.' " See, Endorsement No. CA 99 10, attached to Appellee's Brief as Exhibit C.
 {¶ 17} We find this language is inapplicable to the instant action because it involves liability coverage. Section C of the endorsement, which addresses changes to the UM/UIM coverage, is applicable. Section Cadds the following to "Who is an Insured" for UIM coverage:
 {¶ 18} "Any individual named in the Schedule and his or her `family members' are `insureds' while `occupying' or while a pedestrian when being struck by any `auto' you don't own except: Any `auto' owned by that individual or by any `family member.' "
 {¶ 19} It is axiomatic by adding a broadened coverage to the definition of "Who is an Insured" for UIM purposes the Drive Other Car Coverage-broadened Coverage For Named Individuals endorsement does not serve to reduce or restrict "Who is an Insured" under the UIM endorsement in the policy itself. Because that endorsement contains the same ambiguity found in Scott-Pontzer, appellee is an insured thereunder. InStill v. Indiana Ins. Co., 2002-Ohio-1004, Stark App. 2001CA00300, this Court found a "Drive Other Car Coverage" endorsement, which specifically named two individuals, did not remove the Scott-Pontzer ambiguity.[1]
This Court has followed that general principal in a number of subsequent cases and we adhere to it herein.[2]
 {¶ 20} Accordingly, we find the trial court did not err in finding appellee was an insured under the business auto policy.
COMMERCIAL GENERAL LIABILITY POLICY
 {¶ 21} The commercial general liability policy specifically provides:
 {¶ 22} "2. Exclusions
 {¶ 23} "This insurance does not apply to:
 {¶ 24} "g. Aircraft, Auto or Watercraft
 {¶ 25} " `Bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and `loading or unloading.'
 {¶ 26} "This exclusion does not apply to:
 {¶ 27} "3) Parking an `auto' on, or on the ways next to, premises you own or rent, provided the `auto' is not owned by or rented or loaned to you or the insured;" See, Commercial General Liability Coverage Form, CG 00 01, attached to Appellee's Brief as Exhibit G.
 {¶ 28} Appellee argues the "parking an auto" provision converts the commercial general liability policy into an auto policy. Although in the dissent in Szekeres v. State Farm Fire Casualty Co.,2002-Ohio-5989, Licking App. No. 02CA00004, the author of this Opinion found the "valet parking" provision in the appellant's CGL policy converted it into an auto policy under R.C. 3937.18, as it existed at the time Szekeres' claim came into existence, the case sub judice requires a post H.B. 261 analysis. Because appellant's commercial general liability policy does not insure motor vehicles "specifically identified in the policy," R.C. 3937.18 does not apply. Jump v. Nationwide Mut. Ins. Co.,2001-Ohio-1699, 2nd App. No. 18880. Accord, Bowles v. Utica NationalIns. Group, 2003-Ohio-254, Licking App. No. 02CA68("hired" and "non-owned" vehicle categories insufficient to satisfy "specifically identified" vehicle requirement in R.C. 3937.18 as amended by H.B. 261) ; Pugh v. Erie Ins. Exchange, 2000-Ohio-5929, Stark App. No. 2002CA00134 (mobile equipment provision insufficient to satisfy "specifically identified" vehicle requirement in R.C. 3937.18 as amended by H.B. 261);Pickett v. Ohio Farmer's Ins. Co., 2002-Ohio-259, Stark App. Nos. 2001CA00227, 2001CA00236 (mobile equipment provision in policy insufficient to satisfy "specifically identified vehicle requirement in R.C. 3937.18 as amended by H.B. 261.).
 {¶ 29} Accordingly, we find the trial court erred in finding appellee was an insured under the commercial general liability policy.
 III {¶ 30} In its third assignment of error, appellant asserts the trial court erred in finding appellee was entitled to UIM benefits. Specifically, appellant argues appellee breached the preconditions in the business auto policy when she failed to notify appellant of the accident, and failed to protect appellant's subrogation rights.
 {¶ 31} In Ferrando v. Auto Owners Mut. Ins. Co., 2002-Ohio-7217,98 Ohio St.3d 186, the Ohio Supreme Court held: "1. When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary.
 {¶ 32} "2. When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary. (Bogan v. Progressive Cas. Ins. Co. [1988],36 Ohio St.3d 22, 521 N.E.2d 447, paragraph four of the syllabus, overruled in part.)" Id. at para. 1 and 2 of syllabus."
 {¶ 33} Herein, the business auto policy provision relative to the requirement an insured give written notice of claim reads as follows:
 {¶ 34} "2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS
 {¶ 35} "a. In the event of `accident,' claim, `suit' or `loss,' you must give us or our authorized representative prompt notice of the `accident' or `loss.' Include:
 {¶ 36} "A1) How, when and where the `accident' or `loss' occurred;
 {¶ 37} "2) The `insured's' name and address; and
 {¶ 38} "3) To the extent possible, the names and addresses of any injured persons and witnesses.
 {¶ 39} "D. CHANGES IN CONDITION
 {¶ 40} "2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:
 {¶ 41} "b. Promptly send us copies of the legal papers if a `suit' is brought."
 {¶ 42} Angela Hayes died in July, 1999. Appellee advised appellant of her intent to file a UIM claim on June 13, 2000. Appellant argues appellee's delay in providing this notice was unreasonable and presumed prejudicial absence evidence to the contrary.
 {¶ 43} From the record before this Court, it is not clear whether the prompt-notice provision was breached although appellee did not immediately give notice to appellant. Appellee was required to provide notice to appellant within a reasonable time "in light of all the surrounding facts and circumstances." Ruby v. Midwestern Indemn. Co.
(1988), 40 Ohio St.3d 159, syllabus. In Ferrando, the Ohio Supreme Court declined "to establish a rule * * * that a delay in notice of particular length of time is unreasonable in all cases." Id. at 209. The trial court did not undergo a reasonableness inquiry or a prejudice inquiry. Because the record fails to establish appellee's notice was not given within a reasonable time "in light of all the surrounding facts and circumstances," we remand this issue to the trial court for further proceedings in light of Ferrando. If, upon remand, the trial court finds appellee's notice was given within a reasonable time, the trial court's inquiry will end there. However, should the trial court find appellee's notice was unreasonably given, the trial court should then proceed to a prejudice inquiry. Id. at 210.
 {¶ 44} Because the trial court decided this issue prior to the Ohio Supreme Court's decision in Ferrando, we remand this issue to the trial court for further proceeding in light of Ferrando on the issue of notice.
 {¶ 45} We now turn to appellant's argument appellee breached the subrogation provision of the business auto policy. That provision reads:
 {¶ 46} "A. LOSS CONDITIONS
 {¶ 47} "5. Transfer of Rights of Recovery Against Others to Us
 {¶ 48} "AIf any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person . . . must do everything necessary to secure our rights and must do nothing after the `accident' or `loss' to impair them.
 {¶ 49} "* * *
 {¶ 50} "8. Transfer of Rights of Recovery Against Others to Us is amended by adding the following:
 {¶ 51} "If we make any payment and the `insured' recovers from another party, the `insured' shall hold the proceeds in trust for us and pay us back the amount we have paid."
 {¶ 52} Appellant argues appellee "effectively destroyed [its] right to subrogation" because she did not notify appellant of her potential claim for UIM coverage until after the settlement with the tortfeasor. In response, appellee contends she is entitled to recover UIM benefits because she neither signed a release of the tortfeasor nor participated in the settlement therewith.
 {¶ 53} The issue of whether an insurer is entitled to judgment as a matter law when a beneficiary in a wrongful death action seeks UIM compensation through his/her own personal policy after the personal representative of the decedent has settled a wrongful death claim and released the tortfeasor from further liability without knowledge of the beneficiary's insurance company was addressed by the Seventh District Court of Appeals in Gibson v. State Farm Mut. Auto. Ins. Co. (1997),123 Ohio App.3d 216. The Gibson court declined to create a blanket proposition that a settlement by an insured's legal representative automatically disentitled the insured to UIM coverage irrespective of the actual terms of the contract. Id. at 223. According to appellee, she notified Rubbermaid of her intent to file an UIM claim in June, 2000, approximately five months before the legal representative settled with the tortfeasor. We find a genuine issue of material fact exists as to whether appellee, in any way, impaired appellant's subrogation rights, and, if so, whether appellant was prejudiced thereby. We remand this issue to the trial court for further proceedings in light of Ferrando.
 {¶ 54} Appellant's third assignment of error is sustained.
 IV, VI {¶ 55} In light of this Court's remand of the issue of coverage with instructions to apply Ferrando, we find appellant's fourth and fifth assignments of error to be premature.
 V {¶ 56} In is its fifth assignment of error, appellant contends the trial court's declaration appellee is an insured under the policies is unconstitutional. Specifically, appellant asserts the Ohio Supreme Court's decision in Scott-Pontzer "impermissively infringes upon the right of freedom of contract protected under Article I, Section 10 of the United States Constitution and Article II, Section 28 of the Ohio Constitution." Appellant's Brief at 22.
 {¶ 57} Appellant does not challenge the constitutionality of R.C.3937.18, but rather the constitutionality of judicial action taken thereunder. This Court has previously determined R.C. 3937.18 does not violate either the United States or Ohio Constitution; therefore, any judicial action taken thereunder is likewise not unconstitutional. Germanv. Therm-O-Disc Inc., 2002-Ohio-1848, Richland 5th App. No. 01CA51-2. Judicial decisions do not constitute "laws" as contemplated by constitutional provisions protecting the right of freedom of contract.King v. Safeco Ins. Co. (1990), 66 Ohio App.3d 157.
 {¶ 58} Appellant's fifth assignment of error is overruled.
 VII {¶ 59} In his final assignment of error, appellant contends the trial court erred in denying its motion for a continuance of a ruling on summary judgment pursuant to Civ.R. 56(F).
 {¶ 60} Via Judgment Entry filed April 2, 2002, the trial court continued its hearing on the motion for summary judgment until May 3, 2002, in order to allow counsel for appellant time to conduct discovery relative to release of the tortfeasor in the underlying wrongful death action. Accordingly, we find the trial court did not deny appellant's request.
 {¶ 61} Appellant's seventh assignment of error is overruled.
 {¶ 62} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed in part and reversed in part and the matter remanded for further proceedings consistent with the law and this Opinion.
By Hoffman, P.J. and Edwards, J. concur Farmer, J. dissents.
[1] The Still decision did not specifically address the issue of Drive Other Car Coverage, but rather centered on the issue of whether inclusion of specifically named individual insureds removed the Scott-Pontzer
ambiguity. Nevertheless, for the reason set forth in our discussion concerning the effect of adding broadened coverage, we find theScott-Pontzer ambiguity still exists.
[2] In Egelton v. United States Fire Ins. Co., 2002-Ohio-6176, Stark App. No. 2002CA00157, this Court analyzed the term you in the definition of "Who is an Insured" which specifically included Acovered auto. We find this definition to be significantly different from that presented herein. As such, we find Egelton factually distinguishable and not persuasive in this case.